J-S73030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF P.E., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.G., NATURAL FATHER | No. 799 WDA 2016 |

Appeal from the Order April 28, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-DP-0000176 of 2014

BEFORE: FORD ELLIOTT, P.J.E., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.: **FILED NOVEMBER 1, 2016**

J.G. ("Father") appeals from the order entered on April 28, 2016, in the Court of Common Pleas of Erie County, changing the goal from reunification to adoption[1] for P.E. ("Child"), the minor child of Father.[2] On appeal, Father claims the trial court erred in dispensing with the concurrent goal of reunification where the Erie County Office of Children and Youth ("Agency") did not offer reasonable services to achieve that goal. After careful review, we affirm.

P.E. was born in September 2014 and adjudicated dependent at the age of three weeks. The Agency became involved because the mother had a history of drug and mental health issues and was unable to meet the infant's

_____

[1] A change of a placement goal is a final, appealable order. *In the Interest of H.S.W.C.-B.*, 836 A.2d 908, 911 (Pa. 2003).

[2] With respect to the natural mother of P.E., the goal was also changed to adoption. She has not appealed that order.

basic needs. At the time of the dependency adjudication, Father's paternity had not yet been determined, but the Agency was aware of his status as a Tier III Megan's Law offender.[3]

On October 22, 2014, the court held a dispositional hearing, established a goal of reunification and scheduled a 90-day review hearing. On November 3, 2014, the Agency filed a motion averring that it had received paternity test results identifying J.G. as the biological father of Child; the Agency sought a finding of aggravated circumstances based on Father's 2004 convictions[4] and an order suspending Father's visitation. The court held a hearing on December 3, 2014. Following the hearing, the court granted the Agency's motion for aggravated circumstances and denied its motion to suspend visitation. The court also ordered supervised visitation once a week, maintained the goal of reunification and ordered the Agency to implement a service plan for Father, including a psychological and psychosexual evaluation. *See* Order, 12/18/15.

Thereafter, in July 2015, the court again declined to grant the Agency's petition for change of goal. During this time, the Agency worked

---

[3] Father had entered a plea of no contest to Corruption of Minors (M1), Criminal Attempt/Indecent Assault (Person Less Than 16 Years) (M2), Statutory Sexual Assault (F2) and Aggravated Indecent Assault (F2), involving a 15-year-old victim.

[4] *See* 42 Pa.C.S. § 6302(3)(ii) and (iii).

with Father to implement a court-ordered treatment plan so that Father could improve his parenting skills.[5]

The record shows that Father did make progress in some areas, but struggled or failed in those he chose not to engage in (i.e, Project First Step, a program for improving parenting skills). He failed to submit clean urinalysis screens on nine occasions. Further, the Agency also noted that Father's behavior was inconsistent, at times manic and lacking in impulse control. The Agency also noted that Father continued to place his needs and desires above the Child's needs, preventing Father from ensuring Child's safety and wellbeing.

In January 2016, the Agency recommended a change of goal to adoption and sought to cease its family finding efforts, as an adoptive resource had been identified and had established a relationship with Child. The court held a permanency hearing on April 20, 2016. On April 28, 2016, the court entered an order finding that: Father had only minimal compliance with the permanency plan; the Agency had satisfied the requirements of Pa.R.J.C.P. 1149 regarding family finding; the child had been in placement for 15 of the last 22 months (specifically, for 19 months); no further services

_____

[5] Despite its finding of aggravated circumstances against Father, the court ordered the Agency to offer Father a treatment plan in order to accomplish reunification. *See* Order, 7/22/15.

be offered to Father; the goal be changed to adoption; and this disposition was in Child's best interests.

Father appealed, and he raises the following issues for our review:

1. Did the juvenile court commit an abuse of discretion and/or error of law when it made the express finding that the Agency made reasonable efforts to finalize the child's permanency plan (including reunification services) where the court had ordered the Agency to provide and pay for an independent psychiatric evaluation and the Agency failed to provide that evaluation/treatment?

2. Did the juvenile court commit an abuse of discretion and/or error of law when it determined that the concurrent permanency goal of reunification/adoption was no longer feasible, dispensed with the goal of reunification, and directed the Agency to provide no further services and/or visitation to J.G.?

3. Did the juvenile court commit an abuse of discretion and/or error of law when [it] denied [J.G.'s] request to present the testimony of prospective kinship resource, JE.G [J.G.'s sister]?

4. Did the juvenile court commit an abuse of discretion and/or error of law when it determined that the Agency had satisfied the family finding requirements and when it discontinued further family finding efforts?

Appellant's Brief, at 6.

On appeal, goal change decisions are subject to an abuse of discretion standard of review:

In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court,

not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support the opposite results."

*In the Matter of N.C.*, 909 A.2d 818, 822-23 (Pa. Super. 2006) (internal citations omitted). *See also In the Interest of C.J.R.*, 782 A.2d 568, 569 (Pa. Super. 2001).

We note that issues pertaining to dependent children are controlled by the Juvenile Act, 42 Pa.C.S.A. §§ 6301-75; this Act was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"). *See In re A.B.*, 19 A.3d 1084, 1088 (Pa. Super. 2011); *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).

ASFA was enacted to combat the problem of foster care drift, where children… are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. ***Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons.***

*In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013) (citations omitted) (emphasis added). As to change of goal proceedings, "the best interests of the child and not the interests of the parent must guide the trial court, and the burden is on the child welfare agency involved to prove that a change in goal

- 5 -

would be in the child's best interest." ***In re R.I.S.***, 36 A.3d 567, 573 (Pa. 2011) (citations omitted). The safety, permanency, and well-being of the child must take precedence over all other considerations. ***In the Matter of S.B.***, 943 A.2d 973, 978 (Pa. Super. 2008).

We have thoroughly reviewed the arguments and briefs of the parties and the record before us, and we have examined closely the trial court's resolution of the matter. We conclude that the trial court did not abuse its discretion in finding that the Agency made reasonable efforts to provide Father with services necessary to promote reunification, and that Father failed to make sufficient progress in the treatment plan toward rectifying the problems necessary to lead to reunification. Upon review, we agree with the trial court's determination that "[t]hough he attempted to comply with the reunification plan in some respects, overall [Father] failed miserably, and was unable to demonstrate the emotional health and stability necessary to raise a young child." Trial Court Opinion, 6/22/16, at 18. As the trial court indicated, Father's lack of progress is not necessarily due to his personal history as a sex offender, but stemmed more from his failure to take personal responsibility and "his own lack of coherence and insight into his mental health and substance abuse issues." ***Id.*** Further, the court's finding that Father took "liberties to abuse alcohol and marijuana" after Child had been in placement for a year, is supported by the record; this supports the court's determination that additional Agency services would be "pointless." ***Id.*** at 19. Finally, Child is stable in a pre-adoptive home, and has been in

placement for nearly twenty-one months. We agree with the trial court that a change of goal is necessary and in Child's best interests, and that allowing Father to progress "at his own pace" is contrary to Child's best interests. ***In re R.I.S.***, ***supra***.

Accordingly, we affirm on the basis of the trial court's well-reasoned opinion, and we direct the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.[6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/1/2016

---

[6] We note that the Guardian *ad litem* has filed a separate brief and joins in the Agency's position.